1  Robert M. Waxman (SBN 89754)
      rwaxman@ecjlaw.com
2  John W. Shenk (SBN 261573)
      jshenk@ecjlaw.com
3  Matthew J. Eandi (SBN 279734)
      mjeandi@ecjlaw.com
4  **ERVIN COHEN & JESSUP LLP**
   9401 Wilshire Boulevard, Ninth Floor
5  Beverly Hills, California 90212-2974
   Telephone  (310) 273-6333
6  Facsimile  (310) 859-2325

7  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
8  Including Professional Corporations
   JASON A. WEISS, Cal. Bar No. 185268
9  MATTHEW M. SONNE, Cal. Bar No. 239110
   650 Town Center Drive, 4th Floor
10 Costa Mesa, California 92626-1993
   Telephone:  714.513.5100
11 Facsimile:  714.513.5130
   Email:      jweiss@sheppardmullin.com
12             msonne@sheppardmullin.com

13
   Attorneys for Defendant Alorica Inc.
14

15            **UNITED STATES DISTRICT COURT**

16   **CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION**

17

18 | BARBARA BECKERLEY *et al.*, on | Case No. 8:14-CV-00836-DOC(JPRx)
      behalf of themselves and all those
19 | similarly situated,                       | **NOTICE OF MOTION AND
                                              MOTION OF DEFENDANT
20 |         Plaintiffs,                       | ALORICA INC. TO DISMISS FIRST
                                              AMENDED COMPLAINT
21 |    v.                                     | PURSUANT TO FED. R. CIV. PRO.
                                              RULE 12(b)(6); MEMORANDUM
22 | ALORICA INC.,                            | OF POINTS AND AUTHORITIES
                                              IN SUPPORT THEREOF**
23 |         Defendant.
                                              *[Request for Judicial Notice Filed
24                                            Concurrently Herewith]*

25                                            Judge:  Hon. David O. Carter

26                                            Date:    September 22, 2014
                                              Time:    8:30 a.m.
27                                            Crtrm.: 9D

28
   12413.49:2081411.4

NOTICE OF MOTION AND MOTION OF DEFENDANT ALORICA INC. TO DISMISS FIRST AMENDED
COMPLAINT PURSUANT TO FED. R. CIV. PRO. RULE 12(b)(6); MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF

ERVIN COHEN & JESSUP LLP

**TO THE HONORABLE DAVID O. CARTER AND TO ALL PARTIES AND/OR THEIR RESPECTIVE ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on September 22, 2014 at 8:30 a.m., before the Honorable David O. Carter, United States District Judge, in Courtroom 9D of the above-entitled Court located at Ronald Reagan Federal Building and United States Courthouse, 411 West Fourth Street, Santa Ana, California, 92701, defendant Alorica Inc. ("Alorica"), will and hereby does move the above-captioned Court to dismiss the First Amended Complaint ("FAC") filed by plaintiffs Barbara Beckerley, Dianne Maddox, Raymorn Edden, Cassandra Allen, Dawn Fulmore, Quoashia Lewis-Murray, Vanessa Gomez, Ancelle Parker and Michael Irvin, on behalf of themselves and all those similarly situated (hereinafter collectively, "*Beckerley* Plaintiffs"). This Motion is brought upon the following grounds:

The FAC was submitted by the *Beckerley* Plaintiffs subsequent to Alorica filing its Motion to Dismiss the Complaint. As a result, Alorica's original Motion to Dismiss was taken off-calendar without prejudice pursuant to stipulation and order. The *Beckerley* Plaintiffs' FAC is essentially the same as the original complaint, but includes another named Plaintiff together with spurious allegations that Alorica impeded opt-in plaintiffs from joining the related *Lillehagen* matter. This amendment does nothing to cure the complaint's fatal defects since, as before, the entire action is barred as a matter of law pursuant to the rule against claim-splitting ("Claim Splitting Doctrine").

Pursuant to Rule 12(b)(6) of the *Federal Rules of Civil Procedure*, this action should be dismissed in its entirety as it was filed in violation of the Claim Splitting Doctrine. *Beckerley* Plaintiffs' current claims in this case arise from the same alleged transactional nexus of operative facts, involve extremely similar purported violations of wage/hour laws during overlapping periods of time and will require examination of the same alleged corporate policies and practices, payroll records

ERVIN COHEN & JESSUP LLP

12413.49:2081411.4

2

NOTICE OF MOTION AND MOTION OF DEFENDANT ALORICA INC.TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. PRO. RULE 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1   and wage statements; all of which should have been asserted in other previously

2   filed FLSA collective actions brought by the same counsel which are pending

3   currently before this Court and/or the United States District Court for the Southern

4   District of Indiana.  Plaintiff's FAC actually serves to highlight Alorica's initial

5   argument.  Indeed, the FAC introduces a new named Plaintiff Michael Irvin, who

6   now attempts to join this action after failing to opt-in to a previously filed action

7   brought by the same counsel as in this case.  Further, a clear majority of the

8   *Beckerley* Plaintiffs with whom Irvin has joined forces are actually opt-in plaintiffs

9   in *Lillehagen*.  The FAC attempts to resurrect a foreclosed opportunity for

10  individuals who were eligible, but failed to opt-in, to another previously filed and

11  highly duplicative action against Alorica.  Simply stated, *Beckerley* Plaintiffs and

12  their counsel are now improperly using this duplicative action to obtain an

13  impermissible second bite at the apple.

14       In addition to attempting to circumvent the claim splitting doctrine's clear

15  bar, *Beckerley* was filed in direct contravention of a scheduling order issued by this

16  Court in another pending FLSA collective lawsuit, which months ago barred the

17  assertion of additional claims and joinder of additional parties in that pending

18  action.  *Beckerley* Plaintiffs are largely opt-in plaintiffs in that matter.  In short,

19  *Beckerley* Plaintiffs filed this most current lawsuit as a means of circumventing this

20  Court's scheduling order and in an ill-conceived effort to assert claims as well as

21  join parties that would otherwise be barred in the other pending FLSA collective

22  actions.  This Court should therefore dismiss this lawsuit in its entirety.[1]

23       This Motion is based upon this Notice of Motion and Motion, the attached

---

[1] If this Court should somehow not be inclined to dismiss this action with prejudice notwithstanding the Ninth Circuit's stated preference for that remedy, at the very least *Beckerley* should be dismissed without prejudice or stayed for the same reasons that warrant dismissal with prejudice.

ERVIN COHEN & JESSUP LLP

1  Memorandum of Points and Authorities in support thereof, the Request for Judicial

2  Notice filed concurrently herewith, all pleadings and papers on file in this action and

3  any oral or documentary evidence as may be presented during or before the time of

4  hearing on this Motion, along with any other evidence or argument as the Court may

5  deem appropriate.

6  **CERTIFICATE OF L.R. 7-3 COMPLIANCE**

7       This Motion is made following the conference of counsel pursuant to L.R. 7-3

8  which took place on August 5, 2014.

9

10  DATED: August 15, 2014           ERVIN COHEN & JESSUP LLP
                                     Robert M. Waxman
11                                   John W. Shenk
                                     Matthew J. Eandi
12

13

14

                                By:  _____/s/ Robert M. Waxman_____
15                                   Robert M. Waxman
16                                   Attorneys for Defendant Alorica Inc.

*(left margin, vertical text)* ERVIN COHEN & JESSUP LLP

NOTICE OF MOTION AND MOTION OF DEFENDANT ALORICA INC.TO DISMISS FIRST AMENDED
COMPLAINT PURSUANT TO FED. R. CIV. PRO. RULE 12(b)(6); MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF

# **TABLE OF CONTENTS**

**Page**

A.   The Hawkins Action..............................................................8

B.   The Lillehagen Action..........................................................9

C.   The Beckerley Action..........................................................10

D.   Notice of Related Case and Pendency of Other Action...................13

II.   LEGAL ANALYSIS ....................................................................14

A.   This Case Circumvents This Court's Scheduling Order In *Lillehagen*.............................................................................14

B.   This Case Circumvents The Opt-In Procedures in *Lillehagen* .............16

C.   This Case Violates The Rule Against Claim-Splitting. .......................17

   1.   The Parties Are Substantially Similar and the Time Periods Overlap..................................................................20

   2.   The Claims in Beckerley, Lillehagen and Hawkins Arise From The Same Transactional Nucleus of Facts And Will Substantially Rely On The Same Evidence................................22

   3.   Beckerley Will Impair Rights Arising From Lillehagen and/or Hawkins.....................................................................27

ERVIN COHEN & JESSUP LLP

12413.49:2081411.4

i

NOTICE OF MOTION AND MOTION OF DEFENDANT ALORICA INC. TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. PRO. RULE 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

# TABLE OF AUTHORITIES

**Page**

## CASES

*Adams v. California Dept. of Health Services,*
  487 F. 3d 684 (9th Cir. 2007) ..................................16, 17, 18, 19, 28, 29

*Bennett-Bagorio v. City of Council of Honolulu,*
  2014 WL 296860 (D. Hawaii)...............................................................19, 28

*Biogenex Labs., Inc. v. Ventana Med. Sys., Inc.,*
  2005 U.S. Dist. LEXIS 45405, at *8-10 (N.D. Cal. Aug. 5, 2005)................18

*Clayton v. Dist. of Columbia,*
  2014 WL 1395057 (D. Columbia).................................................................27

*Cook v. C.R. England, Inc.,*
  2012 WL 2373258 (C.D. Cal. 2012) .. 14, 15, 16, 18, 19, 20, 23, 24, 25, 27, 29

*Elliot v. Spherion Pacific Work, LLC,*
  572 F.Supp.2d 1169, (C.D. Cal. 2008) .........................................................11

*Goggia v. Fed. Natl. Mortgage Assn.,*
  No. S-12-3091 LKK/KJN, 2013 U.S. Dist. LEXIS 44202 (E.D. Cal.
  2013).........................................................................................................18, 20

*Greene v. H & R Block Eastern Enterprises,*
  727 F.Supp.2d 1363 (S.D. Fla. 2010).................................................21, 25, 26

*Hawkins v. Alorica Inc.,*
  287 F.R.D. 431 (S.D. IN 2012) ...................................................................22

*Irwin v. Mascott,*
  370 F.3d 924 (9th Cir. 2004).......................................................................21

*Iskanian v. CLS Transp. Los Angeles, LLC,*
  2014 WL 2808963 (Cal. 2014).....................................................................20

*McElmurry v. U.S. Bank Nat'l Assoc.,*
  495 F.3d 1136 (9th Cir. 2007) ....................................................................12

*Michigan Supervisors' Union, Office & Professional Employees Intern. v.
  State of Michigan, Dept. of Corrections,*
  826 F.Supp. 1088 (W.D.Mich.1993) ............................................................17

*Murphy v. Wells Fargo Home Mortgage,*
  2013 WL 4482671 (N.D. Cal. Aug. 19, 2013) ..............................................27

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

*Price v. Starbucks*
   192 Cal.App.4th 1136  (2011)...................................................................11

*Rapper v. State of Iowa,*
   165 FORD. 89 (S.D.Iowa 1996)...........................................................17

*Robinson–Smith v. Government Employees Ins. Co.,*
   424 F.Supp.2d 117 (D.D.C.2006);........................................................17

*Ruggles v. Wellpoint, Inc.,*
   687 F.Supp.2d 30 (N.D.N.Y.2009) .....................................................17

*Rupert v. Jones,*
   474 Fed. Appx. 660 (9th Cir. 2012) ...................................................27

*S.E.L. Maduro v. M/V Antonio de Gastaneta,*
   833 F.2d 1477 (11th Cir. 1987) .........................................................27

*Schaefer–LaRose v. Eli Lilly & Co.,*
   2008 WL 5384340 (S.D.Ind.2008).......................................................17

*Schneider v. City of Springfield,*
   1998 WL 1572763 (S.D.Ohio 1998) ...................................................17

*Sliger v. Prospect Mtg., LLC,*
   2012 WL 6005711 (E.D. Cal. 2012) ...........................................12, 28

*Stark v. Stark,*
   94 U.S. 477 (1876) .............................................................................18

*Taylor v. Sturgell,*
   553 U.S. 880 (2008) ...........................................................................20

*Thomas v. Blue Cross & Blue Shield Assn.*
   333 Fed. Appx. 414 (11th Cir. 2009) .................................................27

*Trinity Christian Center of Santa Ana, Inc. v. Kooper,*
   2012 WL 6552229 (C.D. Cal.) ...........................................................17

*United States v. Haytian Republic,*
   154 U.S. 118 (1894) .....................................................................18, 21

*Villacres v. ABM Industries Inc., et al.,*
   189 Cal.App.4th 562 (2011)...............................................................27

*Wilson v. Guardian Angel Nursing, Inc.,*
   2008 WL 4890589 (M.D.Tenn.2008)...................................................17

NOTICE OF MOTION AND MOTION OF DEFENDANT ALORICA INC.TO DISMISS FIRST AMENDED
COMPLAINT PURSUANT TO FED. R. CIV. PRO. RULE 12(b)(6); MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

This action must be dismissed because it violates the Ninth Circuit's well settled claim-splitting doctrine and was filed in direct contravention of this Court's order. Two largely duplicative actions are presently pending in the United States District Courts. Defendant Alorica Inc. ("Alorica") is defending three highly duplicative collective/class actions before diverse United States District Courts related to exceedingly similar purported violations of federal and/or state wage/hour laws during overlapping periods of time and which will require examination of the same purported corporate policies and practices, payroll records and wage statements, albeit the matter in the United States District Court for the Southern District of Indiana is in protracted settlement proceedings. All three actions are orchestrated by one or more of the same plaintiffs' counsel, who have long been aware of the *Beckerley* claims, but failed to properly bring these claims in either or both of the other pending cases. Indeed, all but two of the named *Beckerley* Plaintiffs affirmatively opted into the other pending FLSA collective action that is pending in this Court. The outlying two named *Beckerley* Plaintiffs who did not opt-in to the other FLSA collective action were eligible to do so, but failed to properly and/or timely exercise their rights. *Beckerley* Plaintiffs are now attempting to use this lawsuit to get a second bite at yet another highly duplicative FLSA collective action. The amendments in the FAC only serves to highlight that the proposed collective/class of claimants in this case clearly overlaps the proposed collective/class of claimants in other pending actions. This case is plainly duplicative and harassing as it patently arises from the same alleged transactional nucleus of facts as the other actions.

*Beckerley* Plaintiffs' claims in this case could have been asserted in such other previously filed cases, but were not alleged. Indeed, significant time has

ERVIN COHEN & JESSUP LLP

1  elapsed since those opportunities expired and the filing of *Beckerley*.  Further, the

2  other pending cases have substantially progressed in their course of litigation,

3  including this Court's order months ago barring new claims and the joinder of

4  additional parties.  As a result of their failure to timely assert their claims in either or

5  both of the other cases, the *Beckerley* Plaintiffs have now filed this new action

6  against Alorica in an effort to bring claims that were either extinguished, abandoned,

7  or deliberately overlooked in the prior lawsuits.  Such attempts at piecemeal

8  litigation are prohibited by both the long established doctrine against claim-splitting,

9  which requires that all claims arising from an alleged wrong be presented in a single

10  action, and this Court's prior order.  Accordingly, this action must be dismissed in

11  its entirety.

12  ## II.   STATEMENT OF FACTS

13       Alorica is an international call center company, headquartered in Irvine,

14  California, employing thousands of employees across numerous call centers

15  nationwide.  (FAC, pp. 10-11, ¶¶ 38-40).  As part of its business model, Alorica

16  provides services to its clients by making and receiving live customer service

17  representative ("CSR") telephone calls on behalf of its clients.  (*Id.* at p. 10-11 ¶ 39).

18  Basically, a large part of Alorica's operations involves the employment of CSRs to

19  handle telephone calls on behalf of Alorica's clients.  Alorica is the sole defendant

20  in what now amounts to three pieces of highly duplicative litigation presently

21  pending before two United States District Courts as follows:

22       (a) *Renee M. Hawkins et al. v. Alorica Incorporated,* U.S.D.C. Southern

23            District of Indiana, Terre Haute Division, Case No. 2:11-cv-0283-JMS-

24            WGH, filed October 18, 2011  (hereinafter "*Hawkins*");

25       (b) *Melissa Lillehagen at al. v. Alorica, Inc.*, U.S.D.C. Central District of

26            California, Southern Division, Case No. 8:13-cv-00092-DOC-JPR,

27            filed January 18, 2013 (hereinafter "*Lillehagen*");

28

ERVIN COHEN & JESSUP LLP

12413.49:2081411.4

6

NOTICE OF MOTION AND MOTION OF DEFENDANT ALORICA INC.TO DISMISS FIRST AMENDED
COMPLAINT PURSUANT TO FED. R. CIV. PRO. RULE 12(b)(6); MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF

1     (c) *Barbara Beckerley et al. v. Alorica, Inc.*, U.S.D.C. Central District of

2     California, Southern Division, Case No. 8:14-cv-00836-DOC-JPR

3     (hereinafter, "*Beckerley*"), filed May 30, 2014.

4     All three cases purport to be collective actions brought by Alorica CSRs,

5 stemming from Alorica's alleged violation of the Fair Labor Standards Act

6 ("FLSA") 29 U.S.C. 201 *et seq.* and various ancillary state wage and hour laws,

7 relating to supposed unpaid wages and/or extremely similar underlying, claimed

8 employment policies and practices of Alorica. (FAC, p. 3 ¶ 12).[2] As discussed in

9 detail below, the cases are all substantially duplicative, and predicated upon the

10 same alleged transactional nucleus of facts and claimed employment practices of

11 Alorica. Although *Beckerley* mentions *Lillehagen* and *Hawkins* in a futile attempt

12 to distinguish itself, it is completely silent with respect to the procedural posture and

13 intervening orders issued in the other cases, including but not limited to this Court's

14 scheduling order in *Lillehagen* that bars the claims now being alleged here. It

15 should be noted, however, that *Beckerley* is not silent with respect to the FLSA

16 collective opt-in protocol for *Lillehagen*. Two of the *Beckerley* Plaintiffs, Michael

17 Irvin and Vanessa Gomez, claim to have been eligible to opt-in to *Lillehagen*, but

18 they failed to do so. (FAC, pp. 8, 11 ¶¶ 28-29, 35b). Now these plaintiffs are

19 attempting to use *Beckerley* to circumvent prior court orders and foreclosed

20 opportunities via the exact same lawyers and by joining forces with plaintiffs who

21 opted in to *Lillehagen*. Critically, one or more of the same counsel represents

22

23    [2] *Hawkins* was brought as a FLSA collective lawsuit and Indiana state wage

24 and hour class action covering the period from October 18, 2008 to the present
(RJN, Ex. C, pp. 29-30), while *Lillehagen* is a FLSA collective lawsuit

25 encompassing the period from August 2010 to the present (RJN, Ex. I, p. 2:9-10).
Similarly, *Beckerley* purports to be an FLSA collective action as well as a state

26 wage and hour class action under various states' laws and generally purports to
cover the period from May, 2011 to the present. (FAC., pp. 4-7 ¶¶ 15-26). Clearly,

27 the time periods in each lawsuit overlap.

28

NOTICE OF MOTION AND MOTION OF DEFENDANT ALORICA INC.TO DISMISS FIRST AMENDED
COMPLAINT PURSUANT TO FED. R. CIV. PRO. RULE 12(b)(6); MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF

ERVIN COHEN & JESSUP LLP

1    plaintiffs in all three actions, such that the *Beckerley* Plaintiffs and/or their lawyers

2    clearly knew or should have known about the "new" claims as early as the *Hawkins*

3    litigation.  Nevertheless, they failed to bring them until years later when they filed

4    the instant case.  This dilatory tactic must not be rewarded.

5        A.    **The Hawkins Action**

6        *Hawkins* was filed on October 18, 2011 in the United States District Court for

7    the Southern District of Indiana.  (Alorica's Request for Judicial Notice[3] ("RJN"),

8    Ex. A).  The *Hawkins* action combines a collective action under the FLSA with a

9    class action asserting state claims under the Indiana Wage Payment Act ("IWPA").

10   (RJN, Ex. B, pp. 1-2).  The sole representative plaintiff asserted "claims against

11   Alorica on behalf of herself and all similarly-situated current and/or former hourly-

12   paid employees of Alorica who worked at the Terre Haute [Indiana] call center for

13   failure to pay minimum wages and overtime wages under the FLSA . . . and on

14   behalf of a class of current and former Alorica employees for unpaid wages under

15   the IWPA . . . ." (RJN, Ex. C, pp. 7-8).  Two types of claims are alleged in *Hawkins*,

16   specifically that Alorica allegedly failed to pay CSRs for off-the-clock work

17   performed prior to and after their shift ("Pre/Post-Shift Work") and work performed

18   during break times ("Mid-Shift Work").  (RJN, Ex. B, p. 2, ¶¶ 4-5).  On September

19   25, 2012, the Court entered an Order Conditionally Certifying Combined Class and

20   FLSA Collective Action, but only as to the Mid-Shift Rest Break Work claims.

21   (RJN, Ex. C, p. 12).  The Court **rejected** the wild notion that Alorica ". . . had a

22

23 ───────────────

24        [3] Alorica has concurrently filed a Request For Judicial Notice ("RJN") in
   support of its Motion to Dismiss.  The RJN attaches several Court orders and
25   pleadings from *Hawkins* and *Lillehagen* which establish the procedural posture of
   those cases, the duplication and nexus of the claims arising from the same alleged
26   transactional nucleus of facts, as well as the Court order in *Lillehagen* that the
   *Beckerley* Plaintiffs are now attempting to circumvent here.  For the reasons stated
27   in the RJN, Alorica respectfully requests that this Court consider the documents
   appended thereto in support of this Motion to Dismiss.

28   12413.49:2081411.4
                                        8

ERVIN COHEN & JESSUP LLP

1    company-wide policy or practice throughout the Terre Haute call center of requiring

2    CSRs to perform uncompensated pre- and post-shift work." (*Id.*).  Plaintiffs' counsel

3    in *Hawkins* is Robert Kondras ("Kondras")  (RJN, Ex. A, p. 1).  Kondras is also co-

4    counsel of record in *Lillehagen*.

5    ### B.    The Lillehagen Action

6         *Lillehagen* was filed on January 28, 2013 in the United States District Court

7    for the Central District of California.  (RJN, Ex. D).  There are six named Plaintiffs

8    in *Lillehagen* who purport to have been or presently are employed as Alorica CSRs

9    located at various Alorica's call centers.  (RJN, Ex. E, p. 4, ¶¶ 13 and 18; RJN, Ex.

10   E, p. 5, ¶¶ 23 and 28; RJN, Ex. D, Dkt. 123).

11        The *Lillehagen* case was brought solely as a collective action alleging failure

12   to pay wages under the FLSA.[4]  (RJN, Ex. E, p. 1).  *Lillehagen* alleges unpaid wages

13   for Mid-Shift Rest Break-Related Work, exclusively, and does not allege any state

14   law claims.  (*Id.*)  *Lillehagen* is also presently pending in this Court.  The Court's

15   July 25, 2013 scheduling order in that case provides a 90-day deadline from the date

16   of the order to amend the pleadings or join parties.  (RJN, Ex. F, p. 2:1-3).

17   Accordingly, the deadline expired on October 23, 2013 without plaintiffs seeking

18   any amendments or joinder of parties.  The scheduling order also set the following

19   dates, albeit the parties recently stipulated subject to court approval for very brief

20   extensions of the dates for expert witness discovery, motion cut-off and trial:

21   Discovery Cutoff:  August 22, 2013; Current Motion Cutoff:  October 20, 2014;

22   Final Pretrial Conference:  January 12, 2015; Current Trial Date:  January 25, 2015.

23   (RJN, Ex. F, p. 1:14-21).  The Court's scheduling order repeatedly warned the

24   parties that a continuance is *highly unlikely* and that "[t]he Court has a crowded

25   _____

26        [4] As in *Beckerley*, however, *Lillehagen* also makes reference to some sort of
     alleged failure on the part of Alorica to keep adequate wage related records.  (FAC,
27   p. 8, ¶ 25; RJN, Ex. E, p. 13, ¶¶ 75, 94)

28
     NOTICE OF MOTION AND MOTION OF DEFENDANT ALORICA INC.TO DISMISS FIRST AMENDED
     COMPLAINT PURSUANT TO FED. R. CIV. PRO. RULE 12(b)(6); MEMORANDUM OF POINTS AND
     AUTHORITIES IN SUPPORT THEREOF

1  docket and to displace another case already set for trial in favor of a case in which

2  counsel have not been diligent in preparing their case would not be just." (RJN, Ex.

3  F, pp. 2:8, 3:18-22).

4      On October 24, 2013, the Court in *Lillehagen* conditionally certified a

5  collective action defined as follows: "All individuals who work or have worked as

6  Customer Service Representatives ("CSR") for Alorica at any time from August 9,

7  2010 to the time of trial, in any territory subject to the coverage of the FLSA [other

8  than Terre Haute]." (RJN, Ex. I, p. 2:9-10). The *Lillehagen* Court set the cut-off

9  date for plaintiffs to opt-in to the case as April 17, 2014 (RJN Ex. I, p. 7:5-14).

10 Importantly, *Lillehagen* extends to all Alorica CSRs nationwide, in contrast to

11 *Hawkins*, which only applies to the Terre Haute, Indiana call center. Notably,

12 between *Lillehagen* and *Hawkins*, the representative class encompasses all Alorica

13 CSRs nationwide, including those employed in Terre Haute, Indiana. Kondras and

14 Allen R. Vaught ("Vaught") have both been counsel of record in *Lillehagen* from its

15 inception. Jahan C. Sagafi ("Sagafi") recently joined the *Lillehagen* case as

16 plaintiffs' co-counsel. Vaught and Sagafi are also counsel of record in *Beckerley*.

17     **C.     The Beckerley Action**

18     *Beckerley* purports to be both a collective action and class action, once again

19 alleging unpaid wages under the FLSA and parasitic wage-hour claims under the

20 laws of the following eight states, specifically: California, Florida, Georgia,

21 Oklahoma, Pennsylvania, South Carolina, Texas and Virginia. (FAC, p. 2, ¶ 7).

22 According to the FAC, the proposed nationwide collective action is "all persons

23 who were, are, or will be employed by Alorica nationwide as CSRs at any time

24 within the three years prior to the filing of the initial Complaint through the date of

25 the final disposition of this action." ("Nationwide Collective") (FAC, p. 4, ¶ 15).

26     Try as they may, Plaintiffs have failed at their attempt to juxtapose the unpaid

27 wage claims in *Beckerley* so as to give the appearance that it is a separate and

28

ERVIN COHEN & JESSUP LLP

12413.49:2081411.4

10

NOTICE OF MOTION AND MOTION OF DEFENDANT ALORICA INC.TO DISMISS FIRST AMENDED
COMPLAINT PURSUANT TO FED. R. CIV. PRO. RULE 12(b)(6); MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF

1   distinct action from *Hawkins* and *Lillehagen*.  Indeed, the *Beckerley* Plaintiffs have

2   effectively **admitted otherwise** in their own pleadings filed with this Court.  (FAC,

3   pp. 3-4, ¶¶ 12-14).  For instance, *Beckerley* expressly excludes the Terre Haute call

4   center (which is the subject-call center in *Hawkins*) and all of the *Hawkins* claims

5   and claimants in their entirety.  (FAC, p. 3, ¶ 12).  Second, some of the FLSA claims

6   in *Beckerley* pertain to averments that either were originally at issue in *Hawkins*

7   (Pre/Post-Shift Work) but no longer are in light of that Court's denial of conditional

8   certification as to those elements of the lawsuit, or which relate to the alleged

9   eleventh hour failure by Alorica to take into account nondiscretionary bonuses, such

10  as earned commissions, when calculating overtime rates[5].  (FAC, p. 2, ¶ 9).  Third,

11  *Beckerley* now alleges that Alorica failed to provide statutorily mandated meal

12  breaks under California law—a topic (*e.g.,* meal breaks under California law) that

13  has already been made the subject of discovery in *Lillehagen*—and couples that

14  claim with entirely derivative causes of action that invoke wage statement issues or

15  some sort of claimed inability on the part of Alorica to maintain wage related

16  records[6].  However, the essence of all these cases is crystal clear: each sounds in an

17  alleged failure on the part of Alorica to pay regular and overtime wages to its CSRs

---

19  [5] However, both *Hawkins* and *Lillehagen* squarely allege so-called Mid-Shift
20  rest break violations under the FLSA, which track the bulk of the claimed state law
    class action violations in *Beckerley*.  (RJN, Ex. B, p. 5, ¶ 10; Ex. E, p. 2, ¶ 5)

21  [6] Just like in *Beckerley*, *Lillehagen* makes reference to an alleged failure by
22  Alorica to maintain accurate wage related records (FAC, p. 7, ¶ 25; RJN, Ex. E, p.
    13, ¶¶ 75, 94).  Similarly, the *Beckerley* Plaintiffs' "new" claim under the Private
23  Attorneys General Act ("PAGA") (FAC. p. 46) is not a "new" substantive claim at
    all, but merely a procedural mechanism to recover derivative civil penalties that are
    predicated upon the underlying statutory violations that have already been alleged.
24  *See Price v. Starbucks* 192 Cal.App.4th 1136, 1147 (2011) "[Plaintiff's] PAGA
    claim is based upon the failure to timely pay him upon discharge. Because the
25  underlying causes of action fail, the derivative UCL and PAGA claims also fail.");
    *Elliot v. Spherion Pacific Work, LLC*  572 F.Supp.2d 1169, 1181-82 (C.D. Cal.
26  2008) ("As both parties recognize, Plaintiff's claim under the Private Attorneys
    General Act is wholly dependent upon her other claims. Because all of Plaintiff's
27  other claims fail as a matter of law, so does her PAGA claim.")

ERVIN COHEN & JESSUP LLP

1   – claims which Alorica flatly denies.

2      In addition to stemming from Alorica's purported wage-hour deficiencies, the

3   parties themselves could not be more closely related.  Six of the eight named

4   *Beckerley* Plaintiffs are also opt-in plaintiffs in *Lillehagen*.  (FAC, p. 4 ¶ 15);  (RJN,

5   Exs. J-O).[7]  Similarly, three of the named *Beckerley* Plaintiffs have actually been

6   selected by the named Plaintiffs in *Lillehagen* as having concrete knowledge about

7   the closely related claims made in *Lillehagen* in their Second Supplemental Rule 26

8   Disclosures.  (RJN, Ex. R, pp. 9, 11-12, ¶¶ 17, 22, 12).  In short, the overlap among

9   the cases is painfully obvious even without the admissions in *Beckerley* discussed

10   below, given the comingling of Plaintiffs and the identification of the same

11   "disclosed" individuals as being most likely to have discoverable information.

12      The remaining two of the eight named *Beckerley* Plaintiffs who are not opt-in

13   plaintiffs in *Lillehagen* were, as admitted in the FAC, eligible to opt-in to *Lillehagen*

14   but failed to do so[8].  (FAC, pp. 7, 9, ¶¶ 28-29, 35).  These named *Beckerley*

15   Plaintiffs who failed to opt-in to *Lillehagen* have now joined forces with the

---

17   [7] The named Plaintiffs in *Beckerley,* who are also opt-in plaintiffs in *Lillehagen,* are bound by the results of the *Lillehagen* lawsuit. *McElmurry v. U.S. Bank Nat'l Assoc.,* 495 F.3d 1136, 1139 (9th Cir. 2007) ("[U]nlike a class action, only those plaintiffs who expressly join the collective action are bound by its results.").  This includes any *contested* order decertifying the collective action. *Sliger v. Prospect Mtg., LLC,* 2012 WL 6005711 at 3 (E.D. Cal. 2012) ("If the court were to decertify based on defendant's motion, its decision would be based on the complete factual record submitted by the parties' arguments, and the applicable law. As a decision on the merits, such an order would likely preclude other courts from certifying a FLSA collective action brought by opt-in plaintiffs against defendant.") Alorica intends to bring its motion for decertification in the near future.

23   [8] Ironically, the FAC alleges that the named *Beckerley* Plaintiffs Michael Irvin and Vanessa Gomez failed to opt-in to *Lillehagen* because they did not receive notice, but Plaintiffs' counsel were  responsible for providing notice to potential FLSA collective members in *Lillehagen* pursuant to the Court's Order Granting Plaintiff's Motion For Conditional Class Certification.  (FAC pp. 7, 9, ¶¶ 29, 35b). To the extent that Plaintiffs now allege that notice was not adequately provided to potential FLSA collective members in *Lillehagen*, those issues could have been addressed on a timely basis in that case.  Their decision to file another highly redundant action against Alorica was not the proper avenue to seek relief.

28   12413.49:2081411.4

NOTICE OF MOTION AND MOTION OF DEFENDANT ALORICA INC.TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. PRO. RULE 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

ERVIN COHEN & JESSUP LLP

1  majority of named plaintiffs who did opt-in to *Lillehagen*, in a desperate attempt to

2  use the new action to improperly obtain a second bite at the apple.

3        The substantial overlap between *Lillehagen* and *Beckerley* is further

4  highlighted by the FAC's newly added allegations under the heading entitled

5  "Alorica Has Misled and Attempted to Intimidate CSRs in an Effort to Prevent

6  Them from Asserting Their Rights." (FAC, pp. 17-19). The allegations under this

7  heading, among other things, are not germane to any causes of action in the FAC,

8  but instead attempt to address purported abuses by Alorica related to the *Lillehagen*

9  case. How do these purported abuses in one pending case open the door to filing a

10 new action against the same defendant? Assuming arguendo they are meritorious,

11 which they are not, these issues should have been addressed on a timely basis in

12 *Lillehagen*. Because Plaintiffs and their same counsel chose not to do so, their

13 attempt to end run the orders in that action should not be rewarded.

14        Despite the *Beckerley* Plaintiffs' brazen attempts to split their claims and/or to

15 somehow distinguish this case from *Hawkins* and *Lillehagen*, substantial overlap

16 exists between each.

17 **D.    Notice of Related Case and Pendency of Other Action**

18        When the *Beckerley* Plaintiffs initiated this action, a Notice of Related Case

19 (Dkt. 3) and Notice of Pendency of Other Action (Dkt. 4) were filed concurrently

20 with the initial complaint. (RJN, Exs. S-T). In these pleadings, the *Beckerley*

21 Plaintiffs **concede** the similarities and relatedness between *Beckerley*, *Lillehagen*,

22 and *Hawkins*. Specifically, the Notice of Related case admits:

23        This case and *Lillehagen* **(1) arise from closely related transactions,
          happenings or events; (2) call for a determination of substantially
24        related or similar questions of law and fact;** and (3) would entail
          substantial duplication of labor if heard by different judges. . . . In this
25        case, [as in *Lillehagen*,] **Plaintiffs are also [purportedly] Alorica
          CSRs pursuing wage and hour claims. . . . Plaintiffs believe that
26        the present case is related to the *Lillehagen* case because both
          cases involve Alorica's [alleged] Continuous Workday Rule
27        violations. . . . Both cases involve the same Defendant and the**

28

NOTICE OF MOTION AND MOTION OF DEFENDANT ALORICA INC.TO DISMISS FIRST AMENDED
COMPLAINT PURSUANT TO FED. R. CIV. PRO. RULE 12(b)(6); MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF

ERVIN COHEN & JESSUP LLP

same Alorica CSR job position. They both address Alorica's [purported] Continuous Workday Rule violations, and, more generally, its pay practices and employment rules." (RJN, Ex. S, pp. 1-2) (emphasis added).

The Notice of Pendency of Other Action continues with the **admission** that *Hawkins* " '. . . involves . . . a material part of the subject matter of [*Beckerley*.]' " (RJN, Ex. T, p. 1:6-8) (emphasis added).  On June 9, 2014 this Court ordered *Beckerley* transferred to its calendar pursuant to General Order 14-03 (Dkt. 11), **finding** that *Lillehagen* and *Beckerley*: **"A. Arise from the same or closely related transactions, happenings or events; or B. Call for determination of the same or substantially related or similar questions of law and fact; or C. For other reasons** would entail substantial duplication of labor if heard by different judges." (emphasis added).[9]

## II.   LEGAL ANALYSIS

### A.   This Case Circumvents This Court's Scheduling Order In *Lillehagen*

The *Beckerley* Plaintiffs clearly filed this action in an attempt to circumvent this Court's July 25, 2013 scheduling order in *Lillehagen*.  That scheduling order set a firm deadline barring the addition of parties and amendment of claims. (RJN, Ex. F, p. 2:1-3).  Moreover, the Court made it abundantly clear to the parties that a continuance would be *highly unlikely*. (*Id.*, at p. 2:8).  The *Lillehagen* Plaintiffs never amended their claims nor joined any parties, albeit two new named Plaintiffs recently substituted into the matter for two earlier named Plaintiffs who were

_____

[9] Virtually identical admissions from plaintiffs and a similar transfer order made by the court were important factors in a recent application of the claim splitting doctrine by United States District Judge Wu to dismiss a second wage and hour class action lawsuit filed in the Central District by the same named plaintiff subsequent to his earlier and still pending, but similar wage and hour class action, with each having been initiated by identical counsel. *Cook v. C.R. England, Inc.*, 2012 WL 2373258 at 4 (C.D. Cal. 2012).

12413.49:2081411.4

14

NOTICE OF MOTION AND MOTION OF DEFENDANT ALORICA INC. TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. PRO. RULE 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

ERVIN COHEN & JESSUP LLP

1   dismissed from the lawsuit pursuant to stipulation and order. (RJN, Ex. D, Dkt.

2   123). The deadline set in the Court's scheduling order has long-since elapsed and

3   the *Lillehagen* Plaintiffs made no attempt to amend those claims, albeit they

4   belatedly asked Alorica to stipulate to the inclusion of the *Beckerley* allegations in

5   *Lillehagen* long after the Court ordered deadline for such relief passed. (FAC, p. 4,

6   ¶ ¶ 14:8-10). The *Beckerley* Plaintiffs' failure to file a motion to amend *Lillehagen*

7   is not surprising since substantial discovery has been ongoing for months, including

8   numerous depositions from around the country as well as the production of

9   thousands of pages of documents. Further, the discovery cutoff for fact based

10  discovery is August 22, trial is set for January (or perhaps shortly thereafter), and

11  this Court has clearly admonished counsel about continuances.[10]

12      Rather than seek the required relief from this Court, several opt-in Plaintiffs

13  from *Lillehagen* took it upon themselves, by and through the exact same counsel of

14  record, to make an end-run around the scheduling order by simply filing *Beckerley*

15  as a "new case" and ignoring the fact that it stems from the exact same alleged

16  transactional nucleus of facts involved in *Lillehagen* and/or *Hawkins* as admitted by

17  the *Beckerley* Plaintiffs. It is likely not by happenstance that the very same counsel

18  of record in *Lillehagen* brought this action after unequivocally having notice of this

19

20      [10] It is beyond dispute that Alorica would be severely burdened by additional
21  onerous discovery in yet another nationwide collective/class action that would not
    only prejudice its ability to concurrently litigate *Lillehagen*, but could potentially
22  create confusion among those who have already opted in to that matter if the
    *Beckerley* Plaintiffs also seek to notify putative class members of their action.
23  Further, the accompanying class notification and trial delay issues should *Beckerley*
    be allowed to continue and not dismissed would lead to significant inefficiency and
24  prejudice. *See Cook v. C.R. England, Inc., supra*, 2012 WL 2373258 at 6
    (dismissing duplicative wage and hour class action lawsuit that was substantially
25  similar to earlier wage and hour class case filed by the same named plaintiff and
    initiated by identical counsel, while rejecting consolidation as a solution: "Here,
26  Defendant's concerns about burdensome discovery and class notification delaying
    trial are compelling, and consolidation would indeed lead to inefficiency and severe
27  prejudice against Defendant.")

28

ERVIN COHEN & JESSUP LLP

1  Court's scheduling order in that case.  Certainly it is not coincidental that the

2  majority of the named *Beckerley* Plaintiffs have <u>affirmatively</u> opted into *Lillehagen*.

3  (RJN, Exs. H-O).  It is crystal clear, therefore, that *Beckerley* was filed by virtually

4  the same collective Plaintiffs in *Lillehagen* as a means of circumventing the

5  scheduling order in that lawsuit.  This conduct is inexplicable.[11]

6  **B.    This Case Circumvents The Opt-In Procedures in *Lillehagen***

7      *Beckerley* attempts to join two new named plaintiffs who were purportedly

8  eligible to opt-in to *Lillehagen* as FLSA collective members, but failed to do so.

9  *Beckerley* Plaintiffs Michael Irvin and Vanessa Gomez both claim to have not opted

10 into *Lillehagen* because they supposedly did not timely receive the opt-in notice.

11 (FAC, pp. 7, 9, ¶¶ 29, 35b).  However, not once did they seek relief in *Lillehagen* to

12 extend the opt-in cut-off date.  Instead, they joined forces with the majority of

13 *Beckerley* Plaintiffs who actually opted into *Lillehagen* to file yet another highly

14 duplicative action against Alorica.

15     These allegations make it abundantly clear that *Beckerley* is improperly being

16 used as a vehicle to obtain a second bite at the apple.  Filing a new highly

17 duplicative action is not the proper procedure for curing failed opt-ins by potential

18

19     [11] Although this Court cannot dismiss *Beckerley* solely for violation of the
20 *Lillehagen* scheduling order, that does not prevent such dismissal when
   impermissible claim splitting occurs, nor does it preclude this court from
21 considering the flagrant abuse of its scheduling order in that analysis.  *Compare
   Adams v. California Dept. of Health Services*, 487 F. 3d 684, n. 1 (2007) ("We note
22 that we are affirming the district court's dismissal on the basis that the second action
   was duplicative of the first, and *not* on the basis that the district court had the
23 discretion to dismiss the second action as a sanction for failing to comply with the
   Rule 16 scheduling  order issued in the first action."), with *Cook, supra,* 2012 WL
24 2373258 at 6 ("*[W]alton* goes on to caution against protecting plaintiffs who 'use
   the incorrect procedure of filing duplicative complaints for the purpose of
25 circumventing the rules pertaining to the amendment of complaints' and advises
   courts to ensure that a 'plaintiff does not use the tactic of filing two substantially
26 identical complaints to expand the procedural rights he would have otherwise
   enjoyed.  These last two comments properly characterize Cook's misguided
27 endeavors in the second action.")

28

ERVIN COHEN & JESSUP LLP

1  FLSA collective members, especially those who never sought relief from a prior

2  case's opt-in cutoff date despite being represented by the same counsel.  Numerous

3  cases hold that when potential FLSA collective members have untimely entered or

4  attempted to untimely enter a FLSA collective action by late-filing their consent

5  forms after the court's deadline, the appropriate procedural mechanism is requesting

6  authorization to proceed from the judge presiding over the case. *See, e.g., Rapper v.*

7  *State of Iowa,* 165 FORD. 89 (S.D.Iowa 1996); *Wilson v. Guardian Angel Nursing,*

8  *Inc.,* 2008 WL 4890589 (M.D.Tenn.2008); *Robinson–Smith v. Government*

9  *Employees Ins. Co.,* 424 F.Supp.2d 117 (D.D.C.2006); *Schaefer–LaRose v. Eli Lilly*

10  *& Co.,* 2008 WL 5384340 (S.D.Ind.2008) ; *Ruggles v. Wellpoint, Inc.,* 687

11  F.Supp.2d 30 (N.D.N.Y.2009); *Schneider v. City of Springfield,* 1998 WL 1572763

12  (S.D.Ohio 1998); *Michigan Supervisors' Union, Office & Professional Employees*

13  *Intern. v. State of Michigan, Dept. of Corrections,* 826 F.Supp. 1088

14  (W.D.Mich.1993); and *Wren v. RGIS Inventory Specialists,* WL 1773133

15  (N.D.Cal.2009).  The *Beckerley* Plaintiffs never made any such requests.

16      **C.**    **This Case Violates The Rule Against Claim-Splitting.**

17         It is axiomatic that '[P]laintiffs generally have 'no right to maintain two

18  separate actions  involving the same subject matter at the same time in the same

19  court and against the same defendant." *Adams, supra,* 487 F. 3d at 688.  This Court

20  recently  explained the holding of *Adams* : "[A]dams holds that plaintiffs have 'no

21  right to maintain two separate actions involving the same subject matter at the same

22  time *in the same court* and against the same defendant." *Trinity Christian Center of*

23  *Santa Ana, Inc. v. Kooper,* 2012 WL 6552229 at 4-5 (C.D. Cal., Carter J.); emphasis

24  supplied.  The rationale for this rule is simple:

25      "The doctrine of claim-splitting is the notion that a party is 'not at
    liberty to split up his demand, and prosecute it by piecemeal, or

26      present only a portion of the grounds upon which special relief is
    sought, and leave the rest to be presented in a second suit if the first

27      fails.  There would be no end to litigation if such a practice were

28   

*ERVIN COHEN & JESSUP LLP*

17

1   permissible." *Cook , supra,* 2012 WL2373258 at 2, citing *United
2   States v. Haytian Republic,* 154 U.S. 118 (1894) and quoting *Stark v. Stark,* 94 U.S. 477, 482 (1876).

3   The ultimate objective of the rule against claim splitting "[i]s to 'protect the

4   Defendant from being harassed by repetitive actions based on the same claim' and

5   to promote judicial economy and convenience," *Cook , supra,* 2012 WL 2373258 at

6   2. S*ee also, Biogenex Labs., Inc. v. Ventana Med. Sys., Inc.,* No. 05-860-JF, 2005

7   U.S. Dist. LEXIS 45405, at *8-10 (N.D. Cal. Aug. 5, 2005) (dismissing a second

8   patent action because "a patent plaintiff should not be permitted to avoid the adverse

9   consequences of failing to assert all patent claims in a pending action by simply

10  filing a new patent action"); *Goggia v. Fed. Natl. Mortgage Assn.,* No. S-12-3091

11  LKK/KJN, 2013 U.S. Dist. LEXIS 44202 (E.D. Cal. 2013) (staying a second action

12  where the claims and relief sought was the same, and parties to the actions were in

13  privity). This is exactly what has happened in the case at bar.

14  In *Adams,* as here, the Ninth Circuit was confronted with two lawsuits. The

15  first case filed by Ms. Adams sought compensatory and punitive damages. It also

16  sought declaratory relief predicated upon civil rights, retaliation, discrimination and

17  breach of contract theories for claims arising from the defendant's decision to

18  reopen its investigation of her qualifications to serve as a peace officer. Ms. Adams

19  then filed a second lawsuit after the time to amend her pleadings under the court's

20  scheduling order in the first case had expired and subsequent to the court's denial of

21  her untimely motion to amend. In her second lawsuit, Ms. Adams added parties

22  whose names she had omitted from the first case, while asserting two new claims for

23  violation of the Fair Credit Reporting Act and the California Investigative Consumer

24  Reporting Agencies Act. The Ninth Circuit explained that there, just like with the

25  *Beckerley* Plaintiffs here, Ms. Adams had knowledge of the factual basis underlying

26  her FCRA and ICRA claims when she filed the complaint in the first action, such

27  that Ms. Adams "was required to bring at one time all of the claims against a party

28

ERVIN COHEN & JESSUP LLP

12413.49:2081411.4

18

1 …relating to the same transaction or event." *Adams, supra,* at 693. In so holding,

2 the Ninth Circuit stated the test for determining whether duplicative lawsuits exist:

3          "To determine whether a suit is duplicative, we borrow from
the test for claim preclusion.

4                                 * * *

5

6          To ascertain whether successive causes of action are the same,
we use the transaction test, developed in the context of claim

7 preclusion.… In applying the transaction test, we examine four
criteria:

8                (i) whether rights or interests established in the prior
judgment would be destroyed or impaired by prosecution

9 of the second action; (2) whether substantially the same
evidence is presented in the two actions; (3) whether the

10 two suits involve infringement of the same right; and (4)
whether the two suits arise out of the same transaction

11 nucleus of facts." 487 F. 3d at 688-689.

12     The Ninth Circuit then explained that "[t]he last of these criteria is the most

13 important," while noting that even though new causes of action (*e.g.,* FCRA and

14 ICRA) "establish distinct rights enforceable by litigants, this factor alone does not

15 differentiate the causes of action." *Id.,* at 689 & 691. Indeed, it likewise "instructs

16 the determination that the second and third factors would also weigh in favor of a

17 determination that [two lawsuits are] duplicative." *Bennett-Bagorio v. City of*

18 *Council of Honolulu,* 2014 WL 296860 at 9, n. 1 (D. Hawaii).

19     Here, these same factors require dismissal of *Beckerley.* First, all the claims

20 in *Beckerley, Lillehagen,* and *Hawkins* relate generally to alleged unpaid wages and

21 are predicated upon Alorica's purported wage payment policies and practices. As

22 will be explained more fully below, these were the key factors that led Judge Wu to

23 hold in *Cook, supra,* that a second wage and hour class action filed by Cook through

24 identical counsel was duplicative of the first case that he had initiated even though

25 some of the claims and evidence differed:

26          "Even though 'evidence supporting the two actions would
[often] likely be distinct, the fact that some evidence of

27 [the defendant's] actions would certainly overlap was

ERVIN COHEN & JESSUP LLP

28  12413.49:2081411.4

                              19

sufficient to fulfill the transactional – nucleus criterion and justify dismissal.

***

[B]oth of Cook's lawsuits allege Defendant failed to comply with wage-and-hour laws during a single time period and require inquiring into the same corporate policies and practices.

The claim-preclusion test borrowed for claim-splitting does not just bar claims that actually duplicate those asserted in a prior action but also those 'which could have been asserted, whether they were or not, in a prior suit between the same parties…on the same cause of action." 2012 WL 2373258 at 5.

Moreover, the chronology of the three cases here is instructive.  Commencing with *Hawkins*, as certain avenues of relief were foreclosed in each piece of litigation, the same plaintiffs' counsel proceeded to file a new action based on the prior case's same transactional nucleus of facts.  As discussed below, application of the claim splitting doctrine mandates dismissal of the instant case.

       1.    *The Parties Are Substantially Similar and the Time Periods Overlap*

The parties in *Lillehagen* and *Beckerley* are the same or in privity.[12]  In *Beckerley*, six of the eight named Plaintiffs are FLSA collective members who have already affirmatively opted-in to *Lillehagen*.  It is without question these are the

_____

[12] For purposes of determining whether the parties are the same, one of the well-established exceptions to the traditional rule against preclusion of a nonparty must be established to show that the parties in the two actions are in privity. One such exception is where "the nonparty is adequately represented in the other action by a party with the same interests, such as in a class action or a suit by a trustee or other fiduciary." *Goggia, supra,* 2013 U.S. Dist. LEXIS 44202 AT 18-19, at *18-19 (*citing Taylor v. Sturgell*, 553 U.S. 880, 894-95 (2008). This exception likewise covers the *Beckerley* Plaintiffs' PAGA claim. *C.f., Iskanian v. CLS Transp. Los Angeles, LLC*, 2014 WL 2808963, *17-18 (Cal. 2014) (California Supreme Court reiterates that "the judgment in [a PAGA representative] action is binding not only on the named employee plaintiff but also on government agencies and any aggrieved employee not a party to the proceeding [since] … [a]n employee plaintiff suing ... under the [PAGA] does so as the proxy or agent of the state's labor law enforcement agencies.")

NOTICE OF MOTION AND MOTION OF DEFENDANT ALORICA INC.TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. PRO. RULE 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

ERVIN COHEN & JESSUP LLP

1  same parties.  Two of the eight named *Beckerley* Plaintiffs, Michael Irvin and

2  Vanessa Gomez, failed to affirmatively opt-in to *Lillehagen*.  This two party

3  incongruity between the *Beckerley* named Plaintiffs and the *Lillehagen* opt-in

4  Plaintiffs does not operate to circumvent the claim-splitting doctrine's "same

5  parties" requirement, particularly since *Beckerley* also purports to be a class action

6  lawsuit under duplicative state wage and hour laws.  More importantly, it is not

7  necessary that all *Beckerley* named Plaintiffs have affirmatively opted-in to

8  *Lillehagen* for the doctrine to apply.  It is sufficient that the parties in *Lillehagen*

9  represent the same interests as those in *Beckerley*, which is crystal clear given that

10  the former may very well be collaterally estopped from proceeding against Alorica

11  as described herein.  Finally, as noted above, identical counsel was present in both

12  cases and the majority of *Beckerley* Plaintiffs constituted actual opt-in plaintiffs

13  from *Lillehagen*.  *See, Irwin v. Mascott*, 370 F.3d 924, 929 (9th Cir. 2004) (holding

14  that judgment in first action against the same defendant would be collateral estoppel

15  in a second lawsuit asserting the same or similar claims even though brought by

16  other plaintiffs where the two parties interests are so closely aligned).  *See also, The*

17  *Haytian Republic*, 154 U.S. 118, 123 (1894)  ("There must be the same parties, or,

18  at least, such as represent the same interests; there must be the same rights asserted

19  and the same relief prayed for; the relief must be founded upon the same facts, and

20  the ... essential basis, of the relief sought must be the same.").  Indeed, the *Greene*

21  case, discussed in more detail *infra*, removes any room for doubt as to whether a

22  second-filed FLSA collective action is barred by the claim-splitting doctrine even

23  where only some of the named plaintiffs in the second action have affirmatively

24  opted-in to the first FLSA action.  *Greene, infra,* 727 F.Supp.2d 1363 at 1368.

25        Similarly, the periods of time covered by each lawsuit plainly overlap.

26  Specifically, the majority of the *Beckerley* Plaintiffs affirmatively opted into

27  *Lillehagen* before filing this action.  Moreover, the collective of potential claimants

28

ERVIN COHEN & JESSUP LLP

NOTICE OF MOTION AND MOTION OF DEFENDANT ALORICA INC.TO DISMISS FIRST AMENDED
COMPLAINT PURSUANT TO FED. R. CIV. PRO. RULE 12(b)(6); MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF

1   in both cases consists of all CSRs employed by Alorica nationwide, except those in

2   Terre Haute.  The same attorneys represent the plaintiffs in *Beckerley* and in

3   *Lillehagen*.  Finally Alorica is the sole defendant in both cases.

4         2.     *The Claims in Beckerley, Lillehagen and Hawkins Arise From*

5                *The Same Transactional Nucleus of Facts And Will*

6                *Substantially Rely On The Same Evidence*

7      As early as the *Hawkins* case filed in the Southern District of Indiana in

8   October 2011, Alorica faced allegations for unpaid wages related to its employment

9   policies and practices.  (RJN, Ex. B, pp. 1-2)  The breadth of unpaid wage claims

10  extended to alleged "off-the-clock" work consisting of Pre/Post Shift Work and

11  break-related Mid-Shift Work.  (RJN, Ex. B, p. 2, ¶¶ 4-5).  After substantial

12  litigation through September 2012, the *Hawkins* court finally entered the

13  collective/class conditional certification order, granting conditional certification as

14  to rest break claims for unpaid Mid-Shift work, but **denying** any relief for unpaid

15  Pre/Post Shift work.  (RJN, Ex. C, p. 12).

16      The *Lillehagen* case, the second action against Alorica, was filed in January

17  2013 in the Central District of California.  *Lillehagen* also stated purported claims

18  against Alorica related to alleged unpaid wages and the same alleged employment

19  policies that were at issue in *Hawkins* other than Pre/Post Shift work claims.[13]  But

20  this time, the *Lillehagen* plaintiffs alleged that Alorica engaged in unlawful break-

21  related employment practices nationwide throughout all their call centers, as

22  opposed to only the one in Terre Haute, Indiana.  (RJN, Ex. E, pp. 1-3, ¶¶ 1-10).  Of

23

24  [13] It is beyond question that the Pre/Post-Shift work claims were known to the
    *Lillehagen* Plaintiffs from the outset of that case.  Not only was Kondras counsel of
25  record in both cases, but the *Hawkins* court had already denied conditional
    certification of that claim in a published decision. *Hawkins v. Alorica Inc.*, 287
26  F.R.D. 431 (S.D. IN 2012).  Thus, it was hardly surprising that the *Lillehagen*
    plaintiffs did not assert this known theory in their lawsuit, notwithstanding the fact
27  that the *Beckerley* Plaintiffs now seek their turn at this judicially discredited claim.

28

NOTICE OF MOTION AND MOTION OF DEFENDANT ALORICA INC.TO DISMISS FIRST AMENDED
COMPLAINT PURSUANT TO FED. R. CIV. PRO. RULE 12(b)(6); MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF

ERVIN COHEN & JESSUP LLP

1   course, these precise claims could and should have been brought in *Hawkins*, but

2   that did not occur.  Accordingly, this Court must foreclose these barred claims

3   cloaked as this new stand-alone action.

4        The fact that *Lillehagen* has progressed close to trial and involves

5   substantially similar evidence buttresses Alorica's arguments.  Indeed, discovery in

6   *Lillehagen* has been exceedingly expansive, covering – among other things – all

7   wage related employment records for the collective members and company wage

8   policies or practices on a national level.  Indeed, the *Lillehagen* plaintiffs have taken

9   the position that their case turns entirely on Alorica's log-in/log-out data for its

10  CSRs nationally (RJN, Ex. G, p. 5-7);  a claim which is patently false and belied by

11  Alorica's long-standing written employment policies signed by thousands of

12  CSRs[14].  (RJN, Ex. H, p. 12-13).  In any event, the sheer volume and breadth of the

13  *Lillehagen* discovery, which has been ongoing for months, is likewise applicable to

14  *Beckerley* in spades.

15       In *Beckerley*, the third wage-related employment action against Alorica, the

16  same counsel of record from *Lillehagen*, Messrs. Vaught and Sagafi , are once again

17  attempting to bring extraordinarily similar wage and hour claims including, *inter*

18  *alia*, the judicially rejected Pre/Post Shift claims from *Hawkins*, along with so-called

19  overtime miscalculation contentions.  (FAC, pp. 2, 4, ¶¶ 9, 15).  For the third time,

20  these closely related claims stem from the purported nationwide wage related

21  policies or practices of Alorica, are brought by the same parties, and were filed by

22  one or more of the same attorneys.

23       This litigation tactic is expressly foreclosed by *Cook*.  In *Cook*, the first wage-

24  hour class case pending before Judge Wu, the plaintiff filed claims for failure to pay

25

26  _____

27  [14] True to form, the *Beckerley* Plaintiffs assert the very same thing with
    respect to Alorica's log-in/log-out data.  (FAC, p. 14-16).

28  12413.49:2081411.4

NOTICE OF MOTION AND MOTION OF DEFENDANT ALORICA INC.TO DISMISS FIRST AMENDED
COMPLAINT PURSUANT TO FED. R. CIV. PRO. RULE 12(b)(6); MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF

ERVIN COHEN & JESSUP LLP

1  rest breaks or pay premium wages, failure to provide meal breaks or pay premium

2  wages for missed meal breaks, withholding of earned wages to fund employee

3  reserve accounts, and deduction from earned wages to fund a driver legal plan.

4  Cook did not seek leave to amend his complaint within the time permitted to do so

5  under the court's scheduling order.  Instead, he filed a second class action through

6  the same counsel, alleging failure to pay minimum wages for all hours worked and

7  failure to maintain statutorily required records or to issue compliant wage

8  statements.  The minimum-wage claims stemmed from the defendant's alleged

9  failure to properly compensate drivers for non-driving time.[15]  The wage statement

10  claims were derivative of the alleged failure of the defendant to generate payroll

11  records of hours worked, written pay statements that could be provided to drivers, or

12  comprehensive explanations of their compensation.[16]  Judge Wu summed up these

13  two lawsuits in one cogent pronouncement that is analogous to this case:  "[T]he

14  same named plaintiff has filed two successive class actions  asserting different

15  Labor Code violation claims against the same defendant."  2012 WL 2373258 at 2.

16        After conducting the foregoing analysis, Judge Wu dismissed the second

17  wage and hour class action with prejudice.  The Court's rationale is on all fours with

18  the instant case:

19        "Clearly Cook's claims…are related to the set of facts implicated in

20        *Jasper* [the first lawsuit] and could conveniently be tried with that

21        action.  All the *Jasper* and *Cook* claims arise from his employment as

22        a truck driver for Defendant during the period from November 2006

23        to March 2011 and from Defendant's alleged failure to compensate

---

25    [15] This is similar to Plaintiffs' claim here that Alorica allegedly failed to include non-discretionary bonuses or commissions in its overtime calculation.

26    [16] This too, is virtually identical to the wage statement claims asserted in

27  *Beckerley*.

28  12413.49:2081411.4                     24

NOTICE OF MOTION AND MOTION OF DEFENDANT ALORICA INC.TO DISMISS FIRST AMENDED
COMPLAINT PURSUANT TO FED. R. CIV. PRO. RULE 12(b)(6); MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

1   him in accordance with California law.  While the specified policy

2   underlying the minimum-wage claim in *Cook*…may not always be

3   intrinsically connected to the policies at issue in *Jasper*, evidence of

4   those policies execution and to their punitively harmful effects on him

5   will almost assuredly involve an examination of the same practices,

6   the same payroll records, and the same wage statements.  At the very

7   least…both *Jasper* and *Cook* would involve areas in which these

8   assertions and evidence overlap to such a degree that the minimum-

9   wage claim would inevitably share the same transactional nucleus of

10  facts….Both…lawsuits allege Defendant failed to comply with wage-

11  and-hour laws during a single time period and require inquiry into the

12  same corporate policies and practices." 2012 WL 2373258 at 5.

13  Here, as in *Cook*, all of the claims in *Beckerley* arise from Alorica's

14  employment of CSRs  during overlapping periods of time; *i.e.*, ultimately, the

15  alleged failure to compensate them in accordance with federal and state wage laws.

16  There, as here, no motion to amend was made within the time ordered by the Court.

17  There, as here, the case involved identical attorneys.  Just as Judge Wu stated:

18  "[B]oth…lawsuits allege Defendant failed to comply with wage-and-hour laws

19  during a single [or overlapping] time period and require inquiry into the same

20  corporate policies and practices."  This is exactly what the law forbids.

21  Similarly, the published Southern District of Florida decision of *Greene v. H*

22  *& R Block Eastern Enterprises* 727 F.Supp.2d 1363 (S.D. Fla. 2010) presents a

23  nearly identical factual situation as is present here.  In *Greene*, the representative

24  plaintiff and other similarly situated individuals filed an FLSA action against their

25  employer, H&R Block ("H&R").  *Id*., at 1365-66.  The initial complaint, filed in

26  October 2009, alleged a failure to compensate for straight or overtime wages and

27  was styled as a nationwide collective action.  In January 2010, the Court denied the

28

12413.49:2081411.4

25

1  first conditional certification motion seeking to certify a nationwide collective

2  action. *Id.*  Plaintiffs brought a second conditional certification motion, limiting it to

3  employees in Miami-Dade County, Florida, which was granted in March 2010.  In

4  May 2010, Plaintiffs who had opted in to the collective action, but who were not

5  named Plaintiffs in the action, filed an additional lawsuit against H&R –

6  specifically, the *Greene* case.  Significantly, there was not unanimity between the

7  opt-in Plaintiffs in the first collective action and the *Greene* case—at least seven, but

8  not all of the *Greene* Plaintiffs had affirmatively opted-in to the previous case.  *Id.* at

9  1368.  The *Greene* Plaintiffs sought certification of a nationwide collective alleging

10  off the clock work claims that in some respects differed from, but still significantly

11  overlapped with, the substance of the wage claims asserted in the earlier action.  *Id.*

12      H&R filed a motion to dismiss *Greene* on the basis of claim splitting and that

13  the *Greene* lawsuit was filed to circumvent the conditional certification order made

14  in the prior action.  In support of their claim-splitting analysis, H&R argued that

15  both cases sought recovery against the same corporation; each generally involved

16  the same overlapping subject ("off the clock work"); and at least seven of the named

17  plaintiffs in *Greene* had filed consents to join the earlier action as opt-in plaintiffs.

18  *Id.* at 1366-67.  In granting H&R's motion to dismiss, the Court rejected the notion

19  that consolidation of the two lawsuits would be appropriate.  There, as would be the

20  case here, the *Greene* court held that the plaintiffs would not be prejudiced by

21  dismissal of their lawsuit because they always retained their right to file separate

22  individual lawsuits against H&R should they withdraw their consent from the prior

23  case.  *Id.,* at 1368-69.

24      In sum, the similarities among *Hawkins*, *Lillehagen* and the instant case are

25  compelling.  Each sounds in wage related claims against Alorica during overlapping

26  periods of time and made by its CSRs predicated upon the same federal wage laws

27  as well as closely related state wage laws.  Equally important, the fact that *Beckerley*

ERVIN COHEN & JESSUP LLP

NOTICE OF MOTION AND MOTION OF DEFENDANT ALORICA INC.TO DISMISS FIRST AMENDED
COMPLAINT PURSUANT TO FED. R. CIV. PRO. RULE 12(b)(6); MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF

1  attempts to add additional derivative theories, such as supposed

2  commission/overtime miscalculations, so-called earning statement deficiencies, etc.,

3  is of no consequence since the claim splitting doctrine applies to claims arising from

4  the same transactional nucleus of facts which "could have" been brought together,

5  but were not so asserted. *Cook, supra, 2012 WL 2373258;   See also, Murphy v.*

6  *Wells Fargo Home Mortgage*, 2013 WL 4482671 (N.D. Cal. Aug. 19, 2013)

7  (dismissing two separate successive lawsuits that had been brought by putative class

8  plaintiffs even though the trial court had actually declined to relate the prior cases.)[17]

9         3.    *Beckerley Will Impair Rights Arising From Lillehagen and/or*

10                *Hawkins*

11         It is well-settled law that "[in the] claims splitting context, the appropriate

12  inquiry is whether, assuming the first suit were already final, the second suit could

13  be precluded pursuant to claim preclusion." *Bennett – Bagerio, supra,* 2014 WL

14  296860 at 9, n. 3.  So too, is the principle that claim splitting applies equally to

15  causes of action that were actually brought or which simply could have been

16  asserted in the first filed action.  *Clayton v. Dist. of Columbia,* 2014 WL 1395057 at

17  5 (D. Columbia) ("Claim preclusion prevents parties from relitigating issues they

18  raised or could have raised in a prior action on the same claim."); *Cook, supra,* 2012

19  WL 2373258 at 5.

20         Here, it is crystal clear that *Beckerley* will impair Alorica's rights or interests

21  *vis-à-vis Lillehagen* and/or *Hawkins.*  For example, in *Hawkins,* conditional

---

22

23         [17] The instant case is predicated upon the same "primary rights" as the prior
cases -- employees' rights to be paid all wages for services rendered.  *See e.g.,*
24  *S.E.L. Maduro v. M/V Antonio de Gastaneta,* 833 F.2d 1477, 1482 (11th Cir. 1987);
*Thomas v. Blue Cross & Blue Shield Assn.* 333 Fed. Appx. 414, 418 (11th Cir.
25  2009).  Because the *Beckerley* Plaintiffs' wage-hour claims here similarly flow from
their prior allegations that Alorica did not pay them all wages allegedly due and
26  owing, their attempts now to recover under different theories or derivative remedies
are futile.  *See Villacres v. ABM Industries Inc., et al.,* 189 Cal.App.4th 562 (2011);
27  *Rupert v. Jones,* 474 Fed. Appx. 660, 661 (9th Cir. 2012).

28  12413.49:2081411.4

NOTICE OF MOTION AND MOTION OF DEFENDANT ALORICA INC. TO DISMISS FIRST AMENDED
COMPLAINT PURSUANT TO FED. R. CIV. PRO. RULE 12(b)(6); MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF

ERVIN COHEN & JESSUP LLP

1  certification was denied as to the Pre/Post Shift Work claims in one of Alorica's

2  locations.  Similarly, Alorica's soon-to-be-filed motion for decertification will be

3  squarely before this Court.  The adjudication of one or both in Alorica's favor will

4  have *res judicata* or collateral estoppel implications for *Beckerley*. *Sliger, supra,*

5  2012 WL 6005711 at *3.  Equally important, those adjudications would apply with

6  the same force to all claims which could have been brought in those cases, whether

7  or not asserted therein.  Hence, this factor likewise militates strongly in favor of

8  dismissal with prejudice. *See Bennett – Bagoria v. City and County of Honolulu,*

9  *supra,* 2014 WL 296860 at 6 (impairment of rights prong satisfied where earlier

10  court proceedings merely rejected certain arguments and decided various discovery

11  issues).

### a. Consolidation Of *Beckerley* and *Lillehagen* Is Improper And Impractical

14      It is anticipated that the *Beckerley* Plaintiffs will argue this lawsuit should be

15  consolidated with *Lillehagen* since the Ninth Circuit in *Adams* acknowledged that

16  district courts not only may dismiss duplicative actions with prejudice, but also have

17  discretion to order dismissal without prejudice, consolidate the two actions, or stay

18  or enjoin proceedings in appropriate circumstances. *Adams, supra,* 487 F. 3d at 692.

19  That argument would be nonsensical.  Dismissal with prejudice is the appropriate

20  remedy here. *See, Adams, supra,* 487 F.3d at 693 (9th Cir. 2007); *Cf. Allen v.*

21  *McCurry,* 449 U.S. 90, 94 (1980) ("In dismissing the duplicative suit with prejudice,

22  the district court acted to protect the parties from vexatious and expensive litigation

23  and to serve the societal interest in bringing an end to disputes.").  Indeed, in *Adams,*

24  the Ninth Circuit emphasized that:

25      "[d]ismissal of the duplicative lawsuit, more so than the issuance of a

26      stay or the enjoinment of proceedings, promotes judicial economy and

27      the 'comprehensive' disposition of litigation [since such orders]

28  12413.49:2081411.4

ERVIN COHEN & JESSUP LLP

28

1   protect the parties from vexatious and expensive litigation and…serve

2   the societal interest in bringing an end to disputes." *Id.*, at 692-693.[18]

3   Similarly, as Judge Wu explained in *Cook*, courts must be cautious about

4   substituting consolidation in place of dismissal where to do so would "protect [ ]

5   plaintiffs who 'use the incorrect procedure of filing duplicative complaints for the

6   purpose of circumventing the rules pertaining to the amendment of complaints.'"

7   *Cook, supra,* 2012 WL 2373258 at 6.  In short, the courts must be vigilant "to ensure

8   that a 'plaintiff does not use the tactic of filing two substantially identical

9   complaints to expand procedural rights he would have otherwise enjoyed." *Id.*

10   The *Beckerley* Plaintiffs have done precisely that.  Put simply, the *Beckerley*

11   Plaintiffs are asking this Court to overlook their failure to assert claims of which

12   they or their lawyers had knowledge since as early as *Hawkins*.  Even in filing

13   *Lillehagen*, one or more of these same attorneys failed to bring all the claims of

14   which they were aware without explanation – *i.e.* the Pre/Post Shift claims rejected

15   in *Hawkins*, or the ancillary state law Mid-Shift rest break claims now advanced in

16   *Beckerley*.  To permit such duplicate claims now or to order them consolidated with

17   *Lillehagen* would be to reward the very piecemeal approach to litigation that the

18   claims splitting doctrine decries.  Equity and fairness dictate dismissal here,

19   especially in light of *Lillehagen's* scheduling order.

20   In sum, all of the allegations here could or should have been alleged in prior

21   cases, but the deadlines passed in those respective actions without any amendments

22   or joinders being asserted.  Accordingly, dismissal is warranted here, just as it was

23   required in *Adams*.

24   _____

25   [18] If this Court should somehow not be inclined to dismiss this action with
26   prejudice notwithstanding the Ninth Circuit's stated preference for that remedy, at
    the very least *Beckerley* should be dismissed without prejudice or stayed for the
27   same reasons that warrant dismissal with prejudice.

28   12413.49:2081411.4

29

ERVIN COHEN & JESSUP LLP

III.   **CONCLUSION**

For the aforementioned reasons, Alorica respectfully requests that this Court dismiss this action in its entirety.

DATED: August 15, 2014                ERVIN COHEN & JESSUP LLP
                                      Robert M. Waxman
                                      John W. Shenk
                                      Matthew J. Eandi


                                      By:      /s/ Robert M. Waxman
                                               Robert M. Waxman
                                               Attorneys for Defendant Alorica, Inc.

ERVIN COHEN & JESSUP LLP

12413.49:2081411.4

30

1

**PROOF OF SERVICE**

2

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

3

   At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Los Angeles, State of California. My business address is 9401 Wilshire Boulevard, Ninth Floor, Beverly Hills, CA 90212-2974.

4

5

   On **August 15, 2014**, I served true copies of the following document(s) described as **NOTICE OF MOTION AND MOTION OF DEFENDANT ALORICA INC.TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. PRO. RULE 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** on the interested parties in this action as follows:

6

7

8

Jahan C Sagafi  ml@outtengolden.com, jlyons@outtengolden.com, jdowling@outtengolden.com, jsagafi@outtengolden.com

9

Allen R Vaught  avaught@baronbudd.com

10

Katrina L Eiland  ml@outtengolden.com, keiland@outtengolden.com, jdowling@outtengolden.com

11

Robert M Waxman     dtarlow@ecjlaw.com, rwaxman@ecjlaw.com, msonne@sheppardmullin.com, jshenk@ecjlaw.com, mjeandi@ecjlaw.com, cemerson@ecjlaw.com, jweiss@sheppardmullin.com

12

13

   **BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

14

15

16

   I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

17

18

   Executed on August 15, 2014, at Beverly Hills, California.

19

20

/s/ Lore Pekrul
Lore Pekrul

21

22

23

24

25

26

27

28

ERVIN COHEN & JESSUP LLP

12413.49:2075272.1